I'll call the case of Kennedy v. Superintendent number 21-1265. And we will be hearing from Ms. Brown. I gather we'll have an introduction there, too. Thank you. May it please the court. My name is Sean Andrew Sear from Duke University School of Law's Appellate Litigation Clinic. The court appointed me as counsel for the appellant, Chal Kennedy, Jr. Clinic students entered appearances as student counsel in this case, and I'm pleased to introduce one of them, Elizabeth Brown, to present the oral argument this afternoon. Thank you. Thank you. Ms. Brown. Good afternoon. May it please the court. Elizabeth Brown for appellant Chal Kennedy, Jr. With the court's permission, I'd like to reserve three minutes for rebuttal. Granted. Thank you, Your Honor. This case involves the fundamental right to a speedy trial. Now, as a preliminary matter, the certificate of appealability granted at this case first asked whether this claim was procedurally defaulted. The Commonwealth has now joined issue with Mr. Kennedy and acknowledging that this claim was fairly presented through one complete round of Pennsylvania's appellate review process and that, therefore, this claim was properly exhausted in state court and is not procedurally defaulted. The Commonwealth's explicit concession acts as a waiver of the exhaustion requirement. We ask that this court proceed to the contested issue in this case, which is regarding the merits of whether Mr. Kennedy's constitutional right to a speedy trial was violated in the over four-year delay from arrest to trial. Can I ask one question? First of all, congratulations. If I were your age and in your position, I'd be terrified. And clearly you're not. But the question is this. Despite. Do we have to accept the concession? Your Honor, this court left it open and Sharif, whether or not this court is obligated to accept the Commonwealth's waiver of exhaustion. So it's an open question in this court. We suggest that this court should accept the waiver here because the purpose of exhaustion is about comedy and federalism. And when the Commonwealth's own representatives have come to court and have said that they believe that their courts were given a fair opportunity to adjudicate the constitutional claim, the purposes of exhaustion are not benefited by not proceeding to the merits of this claim. So for that reason, we say that this is not the case where the court should consider rejecting the waiver. And we ask that you proceed to the merits. But, you know, exhaustion and procedural default are not perfectly synonymous in this. And so it's one thing to say that you can accept a waiver of exhaustion. But procedural default is kind of a different creature. And it represents a respect for the state court process in a way that is a respect of state courts, not necessarily state as litigant or state as party. And in this case, it seems that there's been a lot of focus on the Superior Court briefing that Mr. Kennedy filed. But he also filed a petition for review in the Pennsylvania Supreme Court. And I see nothing in that petition for review that even references the Sixth Amendment or any of the cases. Putting aside whether or not that Superior Court case did, because that was really a state law rule case that had an oblique reference to the speedy trial constitutional right. So given that this is a procedural default issue, and given that procedural default and exhaustion are not the same, doesn't that make it much harder for us to accept a concession? No, Your Honor. I think it's actually the opposite. Procedural default, unlike exhaustion, is something that the state is obligated to raise. So exhaustion is specifically mentioned in 2254b3 as something that the Commonwealth cannot waive by merely failing to raise it. But procedural default can be waived by a failure to raise. And here, the Commonwealth has made no argument that the claim was not, that the claim, their argument is that the claim was fairly presented to their courts through a complete round of the. But we can also assert procedural default sua sponte, right? So there's a lot of flexibility in this space. That's true, Your Honor. This Court can. But regarding the Superior Court petition, or the Supreme Court petition, Your Honor, this Court has held in Lambert v. Blackwell that a Pennsylvania PCRA petitioner has completely exhausted their available state remedies at the point that the claim is presented to the Pennsylvania Superior Court. So at the point that it was presented through the Superior Court brief, Mr. Kennedy had exhausted his constitutional speedy trial claim. Any extra petitions he takes after that is availing himself of an unavailable state remedy. And what he does beyond that is not, it does not un-exhaust the claim because he did not bring that petition. But it strikes me as if he would have never filed the petition, that might be true. But if he files it and doesn't raise this issue, that it still might be true, but it's a little more complex. Your Honor, I don't think it's more complex, and neither have the other circuits that have squarely addressed this question. Both the 6th, 8th, and 9th circuits have all held that in states where the state court has explicitly stated that a petitioner need not avail themselves of the state Supreme Court in order to exhaust their claims. That whatever the contents of a discretionary petition or its equivalent to that state Supreme Court state says, it does not matter for the purposes of exhaustion. Because what matters is what is presented to the intermediate appellate court, which is the highest level that the petitioner is required to bring it under those states' rules. And it's the same thing here in Pennsylvania. Pennsylvania, through Order 218, has stated that it believes that its states, that its rights are fully protected by being presented through the superior court level. Here, Mr. Kennedy did that. He thus exhausted state remedies. And so when you say that he did that, as far as I can tell from his superior court petition, he referenced the state law claim for the speedy trial law claim, which is different. There's elements of prejudice there in one and not in the other. And he referenced the Sixth Amendment and the Barker case as really just, I would say, relatively could be characterized as oblique references saying that the state law claim was modeled after or bears some significance or was inspired by the constitutional right. But making a reference and putting a state law claim in context with respect to other Federal rights, I don't know that that necessarily raises those other Federal constitutional rights as fairly presenting them to the court. It contextualizes the state law argument, which is different than presenting a Federal argument. Your Honor, but I think what Mr. Kennedy did here was more than that. The substance of that petition was entirely about the violation of his right to a speedy trial. And he referenced Barker. He referenced the Federal constitutional provision as well as the coextensive Pennsylvania petition or constitutional provision. And he spoke extensively about the denial of his right to a speedy trial. It's true that it was mostly framed and it was framed mostly under that state law claim. But as this Court has recognized, what is required is fair presentation, not perfect presentation. And under the McCandless factors, he is referencing the Federal Constitution. He's referencing the key Federal case at issue. And he is putting the issue of the denial of his right to a speedy trial, a very clear right, before the court. And that is enough, especially here where the Commonwealth themselves have said that they believe that this claim was fairly presented in the brief. And so we ask that this Court, even if this Court believes that the Commonwealth was wrong, to not reject their waiver. Because again, in Sharif, this Court said that even when the State's waiver of exhaustion is based on a misunderstanding of the law, the Court still can accept the waiver. Because the interests of comedy and federalism are not advanced by this Court rejecting when the State says that they believe that their interests in the — in having these claims first adjudicated in their proceedings is properly — was properly protected. Let's say we accept that waiver and we're moving on to merits. You've argued that we don't need to defer to the Superior Court's PCRA decision as — because it was contrary to an unreasonable application of Supreme Court jurisprudence. But that assumes that EDPA deference comes into play. Why should we consider EDPA deference where the State courts here did not address the federal constitutional right? Your Honor, we actually — I agree with you that the State courts here did not address the claim and that EDPA deference would be inapplicable. Our discussion of that was that the State court's opinion clearly is discussing a trial delay. It's merely to the extent that this Court believes under — that those determinations are applicable for this constitutional claim, that no deference is to be afforded to those claims. It is — it appears in reading the State's Superior Court opinion that they did not see themselves as adjudicating a federal claim. Their entire discussion is in State law terms. And to the extent that they are even referencing it, it is clear that they are rejecting the idea that judicial delays would count against the Commonwealth, which it's clear under Barker that they must count against the Commonwealth. So we believe that EDPA deference is not applicable here, that the State court did not adjudicate this claim on the merits. Where does that leave us in terms of deference to the State court fact-finding? Your Honor, regarding fact-finding here, the facts that seem to be afound were that they're a 16-day period that of — that they — those are the facts. It beyond — their discussion of — about diligence is — goes beyond just mere fact-finding. It is a — it is their adjudication of the claim under State law. We don't believe that that — this Court need to give deference to that determination because the fact-finding is just the counting of days. Any interpretation of how it counts and how it weighs is a legal question that this Court should analyze for the first time under the plenary standard applying Barker to these facts. It seems to me there's not a lot of daylight between you and the Commonwealth on the facts. But the two things that interest me, the Commonwealth, I think, makes two pretty good arguments, which maybe you'll feel more comfortable addressing. One is the third Barker factor, that while yes, at the beginning, for the first 10 months, twice, your client raised a right to a speedy trial, once he found himself on home release, in effect, or community release after that, he stopped making requests for a speedy trial. And so 30 months go by until the trial occurs without hearing any more from him on the subject. I think I know what your answer to that is. But then the fourth factor is prejudice. The Commonwealth argues that, wait a minute, we were the most prejudiced because we lost the testimony of a witness because of the delay. And he can't point to any prejudice other than the usual anxiety that anyone feels waiting to see their case resolved in court. So how do you respond on the third and fourth of the Barker factors? Regarding the third factor, Your Honor, it is clear under Barker that a failure to assert is not a waiver of the fundamental right. And we believe that the Commonwealth's comparison to Barker is inapplicable here, given that this case does not involve the same sort of explicit motivation to acquiesce in the delay. My time is running short. As for prejudice, Mr. Kennedy was both presumptively prejudiced, given the length of this delay of this court. My time has expired. Counsel, you're on our time. As long as your answers are helpful, we'll keep going. So feel free. As for prejudice, given the length of this delay, Mr. Kennedy's trial was presumptively prejudiced, as this court has recognized in Baddus. And the Commonwealth's argument that Mr. Kennedy was benefited at trial by this delay is inaccurate. In fact, they point to the testimony of Mr. Welton. But what actually happened at trial was that Mr. Welton got on the stand and he said he didn't remember. That's true. But what the Commonwealth was able to do, given that they were able to read to the jury through a recollection of memory, they were able to read in his police interview as well as preliminary hearing testimony. So effectively, the Commonwealth was able to bring in contemporaneous testimony from Mr. Welton, all the while saying that everything that Mr. Welton would say on the stand at trial was a lie and could not be trusted. And then it's that version of Welton, the one on the stand that the prosecution said can't be trusted, that Mr. Kennedy was able to cross-examine. So it's hard to say how he was benefited by the delay, given that situation, that the Commonwealth was actually able to preserve all of the testimony that they wanted from Mr. Welton. And beyond that, for his personal prejudice, it is the cumulative effects of this delay on Mr. Kennedy throughout this time that is what makes this delay personally prejudicial to him. His ten months of pretrial incarceration and six months of house arrest, along with the effective loss of his employment with the Marines, was very prejudicial to Mr. Kennedy. He had enlisted into the Marines to serve his country, and yet what happened because of these charges once he was released is that he was isolated from his unit. He was relegated to undesirable work tasks, meanwhile watching his fellow Marines participate in various training exercises and other activities, and that he was not able to do. He had enlisted to do those things, to be a full part, a full participant in the Marines, and yet he was unable to have that job that he had had. He had lost the job he had expected that he would have. If we can step back to the invocation of the right, that is the third factor, you say there's not an issue here of motivation, but doesn't the sequence of events here speak for itself? It's once he's released, doesn't he have the incentive of prolonging that as long as possible with the risk of conviction and incarceration that would possibly follow upon trial? Your Honor, we think that inference is inapplicable here, given that no one is arguing that Mr. Kennedy wasn't prepared to go to trial during these times. It's, in fact, the Commonwealth's own lack of judicial resources that delay trial, their own inability to bring witnesses to trial that delays things. The one period of time after the Commonwealth's first continuance for further investigation is when Mr. Kennedy is seeking a non-trial disposition, which is seeking to bring an end to this prolonged delay. So his actions are not prolonging any delay. And moreover, again, the court in Barker did not simply infer acquiescence from his lack of assertions, but from the clear facts that Barker was gambling on his accomplice's acquittal and that he was in a tacit agreement with the prosecution there that they would wait for as long as it would take for his accomplice to have a final judgment in his case. And it just so happened that it took a very long time because of mistrials, hung juries, and appeals. And it wasn't until after there was a final judgment of conviction in his accomplice's case that Mr. Barker's actions changed. Is what we're supposed to look for preparedness to go to trial or invocation, the application to move forward with the trial? The third factor is about assertion of the right invocation. That's true. We're not arguing the third factor weighs in Mr. Kennedy's favor. What we're arguing is that merely it should not weigh heavily against him in light of the circumstances here, that he was prepared to go to trial and that this isn't a case where he was sitting back and acquiescing in the delay because he was gambling on something. It's simply that he was continually running into the Commonwealth's own lack of preparation through their judicial system being ill-prepared or their other administrative functions being ill-prepared by not executing writs and bringing witnesses to trial. It's in light of those circumstances that we don't think that his – we think that his lack of assertion does not weigh heavily against him in this case, that the other factors are strong enough here that there was a clear violation of his constitutional rights. Given that the – it's true that the district court dropped a footnote as to merits, but its decision really rests on the procedural default. In view of that, if we were to overcome that, can we move on to the merits here or is a remand required? And is there any reason that a remand would be helpful in terms of the opportunity for an evidentiary hearing? Your Honor, we think that in – that this court can, in light of the Commonwealth's concession and waiver of the procedural default and exhaustion here, we believe that this court can at least vacate with the district court's judgment. And we believe that the record here is sufficient that this court can affirmatively say that Mr. Kennedy's constitutional rights were violated. If this court believes that their additional fact-finding would be better to be able to further draw out what exactly was going on during these delays and to be able to consider the potential weight that these delays should have, then we would ask for an evidentiary – or remand for an evidentiary hearing. But we do not believe that that is necessary in this case. You know, as far as the weight that things have, it seems this phrase court congestion can just be thrown around. The courts were crowded. The courts were busy. You say that that should at least, as Irie Barker says, that should count like less heavily against the government, which is kind of a strange expression, right? Maybe it seems that it counts against the government but not quite so heavily. But what about just the reference of court congestion? The record, at least as far as I can tell, doesn't have a lot of data on that. You know, typically if you want to transfer from one forum to another, one of the criteria is court congestion. You say each judge in this district has 400 cases and the district that I want to transfer to each judge only has 100 cases. So you begin to do some sort of real meaningful docket analysis where you begin to do that. And that's missing here, at least as far as I can tell. Does that help your case at all? I mean, if we find out that court congestion was more congested, I guess that makes it count even less against the government possibly. And if we find out that it was really not as congested as it made it sound, it's hard to weigh something on an indeterminate factor weighing basis when we don't even have enough data in terms of what it is other than a broad description, court congestion. What are your thoughts about how much weight we should give this term that's used but we don't know a lot of data about? A couple of things to that.  We think court congestion really should be understood as a lack of resources in the Commonwealth's judicial system to protect this fundamental right. And while it may weigh less heavily in general, here it is deeply concerning. It happens two years after arrest and it extends for 18 months. And 18 months is long enough in its own to trigger a marker inquiry. I think if this was a very short period of judicial delay, this would be a different case, but we have a very extended period of time. It is the Commonwealth who has the responsibility to justify the delay. So our position is that to the extent that there are ambiguities, that that should weigh against the Commonwealth, that the Commonwealth had the opportunity to justify this delay, to explain what exactly was going on, to say why this judicial delay shouldn't be considered extreme given how long it is and how late it occurs in the pendency of this case. Yet they haven't done that here. And even if the problem is that the Pennsylvania courts are so congested that they can't give defendants of their constitutional rights to the speedy trial, they can't simply waive that off as saying, well, everyone has to wait. It's deeply concerning if Philadelphia County is able to have a judicial system that does not give each and every defendant there a speedy trial who wants one. And so where a defendant is not adding to the delay, the Commonwealth has the responsibility to ensure that their right is protected and they should provide a judicial system that does give them a speedy trial. So the takeaway I have from your answer is that maybe court congestion actually doesn't justify this delay too much at all. Is that the takeaway? Yes, Your Honor. I don't think that court congestion can justify any of this delay. It happens two years into an open and shut case as the Commonwealth frames it, and it extends for so long. I don't think it must weigh against them. And it simply weighs, as the case law says, it weighs less heavily than an intentional delay to hamper the defense. And that's clear that those kinds of delays should weigh most heavily. That doesn't mean that these delays aren't also significant themselves. Okay. Thank you. We'll hear from you in rebuttal. Mr. Andrews. Good afternoon. May it please the Court. Peter Andrews for Appellees. I'd like to pick up what Judge Stearns asked about the prejudice in this case. And a central fact in this case is that Mr. Kennedy was captured on the scene jumping out the second floor of the victim's house with the victim's jewelry in his pockets. When we're talking about trial prejudice, this issue of the two witnesses, the fundamental strength of the Commonwealth's case against Mr. Kennedy wasn't impacted in any way that hurt Mr. Kennedy at trial, because fundamentally the evidence against him was strong, and substituting in the other victim only benefited Mr. Kennedy, only benefited him because, as the discussion revealed with Mr. Kennedy, the other witness got up during cross-examination and said, I've never seen Mr. Kennedy before in my life. That testimony only helped Mr. Kennedy's defense, and that testimony only comes about as a result of the delay in this case. So there's no evidence in the record to support a showing of trial prejudice or to support the anxiety and concern that Mr. Kennedy has talked about in his brief. That factor weighs in the Commonwealth's favor. So just to tease this out, though, with a hypothetical, let's just say that there's a crime that's committed and there's only two witnesses to the crime, one that's going to testify on behalf of the Commonwealth, one that's going to testify on behalf of the defense. Say 10 years go by and the witness on behalf of the Commonwealth has now, through just natural cause, has passed away. Would it be your position that in that instance then that there's really the key, most important prejudice prong has now favors the Commonwealth? Well, Your Honor, setting aside the confrontation clause problems that that scenario brings to mind, I would say that that does not favor the Commonwealth, because in that circumstance the extended delay and the difference between a witness who's died versus a witness who is essentially testifying inconsistently with previous statements. So under that hypothetical. Yeah, so we can even assume, I mean, we can sharpen the hypothetical to take some confrontation clause stuff out. Say they gave no prior statements, they gave no nothing. No out-of-court statement that they ever gave will be admitted. So we can try to take as much of that off the table as we want, just to sharpen the hypo, right? But when we do that, it seems to me that the point would be if we're just looking at prejudice in terms of how's the Commonwealth case doing, the Commonwealth case doing much worse in that scenario, and if that's the most important prejudice factor, then in that instance, in this kind of life insurance, trial through life insurance almost, it seems that the speedy trial, that factor would tilt against a speedy trial, right? So in this hypothetical where we've got a witness who is testifying for the first time 10 years later and that testimony doesn't benefit the defendant, I would say that at that point it's essentially neutral, right? Because the defendant in that circumstance isn't being harmed or, let me put this another way. When you don't have pre-existing statements that you're comparing, there's no pre-existing statements you're not comparing, at that point it would be reasonable to draw an inference about memory loss because that's what this factor is really targeting. It's targeting the effect of memory, which is difficult to quantify in most circumstances. It's the effect of memory over time. And so in the hypothetical we're talking about, there's no real way to understand which direction the memory points. There's no way of knowing. And so in that circumstance it might be appropriate to say there's no way the memory delay helped the defendant, right? But in the circumstances we have here, we know that the memory delay did help the defendant. We know that because the victim's initial statements were extremely inculpatory of the defendant. Said he came in, he pointed a gun at my head, threatened to kill me, my kids are in the house. And then at the time of trial he says, I had never seen this man in my life. I don't know who he is. I don't remember anything. That delay can't have helped Mr. Kennedy. And so under the facts of this case, he hasn't shown that kind of trial prejudice. So when a witness has memory issues and that triggers the admission of various recorded recollections that can be then read in front of a jury, that in fact may strengthen the government's case, right? It may, but those recorded recollections, the delay doesn't really have any effect on whether or not the recorded recollections could have come in. Because if you imagine a situation where the witness testifies consistently throughout, testifies consistently at trial with his prerecorded statements, obviously the prerecorded statements don't come in, but their evidentiary effect, but the evidentiary effect at trial is the same because the contents of the statements are the same. Well, we can quibble over, you know, whether particular testimony of a witness here or there makes a difference. But isn't the real issue here that you've got a presumption of prejudice to overcome? And the greater the length of delay, the greater that presumption. And we have here a remarkably long delay. So, I mean, this presents us with a problem in Velazquez, where if what we're looking at in terms of prejudice is the effect on the defense, isn't it the very passage of time that puts us in this position of, you know, in retrospect, you're trying to come up with some assessment? And it's the presumption in that circumstance that carries the day. Sure. So, first, our position is that this is not a presumption case because they didn't squarely address that in their opening brief. But assuming that this is a case where a presumption of prejudice applies, we can rebut that presumption. And there are cases like the Heiser case where the Commonwealth was able to, by evaluating the trial record, by examining the testimony, would show that the defendant's ability to defend himself was not damaged by the delay. So this is a case where when we look at the record and when we look at this discussion of the witnesses that we've been going through, when we look at the complete lack of testimony by either Mr. Kennedy or his counsel, either in trial or leading up to trial, the lack of any indication that there were witnesses or pieces of evidence that became unavailable as a result of the delay, when you take all that together, as we pointed out, we can overcome the presumption of prejudice. And so this factor weighs in our favor. Let me go ahead. Just another facet. First of all, let me commend you on how fair-minded I think your brief is. I was impressed with how the approach that you took. I realize that there was no oppressive pretrial detention in the sense that Justice Souter, I think, but being in the custody of the Marine Corps is not my idea of a day at the beach. And, you know, he had career options that were frustrated and opportunities that he lost. Because can't we draw some inference of prejudice from just the conditions under which he was released? Sure. So two responses to that, Judge Stern. So the first is about the case law and the second is about the record here. The first is that the case law hasn't, in the circuit, the Third Circuit has never recognized that anything sort of below a loss of employment, straight up, where you're losing your job effectively as a result of the delay can make out that kind of anxiety and concern. And I'm thinking of the case out of the Virgin Islands, name is escaping me, but where there was that anxiety and concern showed where the defendant was unable to work, where she was hospitalized because of that kind of delay. So, and based on the record we have here, Kennedy has not made that showing because what he's talking about are changes in his work responsibilities. They are peripheral changes in his work responsibilities because he's still a Marine. He is still working. There's no indication that he was detained in the way that you might think of a Marine being put in the brig or something like that. He's a civilian member of the Marine Corps who's able to continue living his life. Those facts in the record are not enough to have made that showing of anxiety and concern. Well, you know, but I get that Barker kind of quantizes or gives us a numerical list of what may constitute prejudice. You know, when I read Barker, I don't know, though, that that is necessarily supposed to be exhaustive, right? I think the formulation is we understand that courts have recognized these concerns. So rather than try to fit the adverse kind of employment action into the recognized anxiety prong or consideration, why don't we just give it its own consideration because it seems to be maybe independently weighty in a way that would be distinct, in some ways, from anxiety, but anxiety can be weighty, too. So is there anything in Barker that you think, or obviously it's been a long time since Barker, subsequent cases that limits those prejudice factors to just those identified in Barker? So Judge Phipps, I would say that while Barker isn't intended to be exhaustive, the case law sense Barker points us in the right direction as far as what kinds of things rise up to this high enough level of anxiety and concern. Because when we're talking about anxiety and concern, what we're thinking about is in the context of this BD trial, right, it has to be greater than the anxiety and concern that is attendant in any criminal case, right? There will always be some anxiety as a result of being charged with crimes. And so here, the reason that Kennedy's change in work responsibilities in the Marine Corps isn't enough to show that he was based on what we have on the record, it's not serious enough. There's no indication that he was suffering from severe anxiety in the way that the cases have indicated. There's no indication. But let's just say we don't put it into the anxiety prong. Let's just say we say Barker articulated three non-exhaustive prongs, and then let's just say it's an open field after that. And one of the items that we could contemplate is adverse employment effect, separate from anxiety. If we give that its own weight, then that tilts against the Commonwealth, right? Rather than trying to say it's not enough for anxiety. So we're just going to give it its own weight, because Barker says this wasn't an exhaustive list. And I don't think it was relevant in Barker, but it's relevant here. Maybe. You can tell me it's not. Well, so I would say that, again, even if we take, I mean, adverse employment may be a bit of a legal phrase. But when we think of that, we think of maybe you're put on leave. Maybe you're not allowed to come into the office. Maybe you are demoted. But the record here, which, again, the record evidence of what was going on with Mr. Kennedy at the Marine Corps is not very strong in his favor. There's not a lot of testimonial evidence about what was going on. But to the extent that he's doing one work duty instead of another, that's a stretch, in our view, to put that in as something that the speedy trial right of the Sixth Amendment protects. That that's a little bit, stretching a little bit too far to scoop Mr. Kennedy in, when kind of the way the courts have been going over the years has figured out a way to put employment into the puzzle. Right? It's part of this anxiety and concern. What should we make of the Supreme Court's statement in Betterment that one of the major evils that this speedy trial clause was meant to prevent was the disruption of employment, drain on financial resources and curtailing of associations. Don't we have those things here? Your Honor, I don't think we have. So I don't think the record shows curtailing of financial resources, because Mr. Kennedy is still being employed as a member of the Marine Corps throughout the pretrial proceedings. Wasn't there evidence that he wasn't able to re-enlist? I'm not sure of that offhand. And I apologize. The other parts that were mentioned by the court in Betterment? Disruption of employment and interference with associations. Sure. I don't think that those are present here on this record. He's still being employed by the Marine Corps. He ultimately wasn't, if we assume he wasn't ultimately able to re-enlist. Those are connected to his criminal charges. They don't go beyond sort of what would normally be of a pace with a person who is facing these sorts of criminal charges. And because the courts have, as I was talking to Judge Phipps about, because the courts have, in the Barker case law, have incorporated loss of employment as a part of anxiety and concern, there's no reason to expand what the courts have done here when there's just not very strong record evidence that Mr. Kennedy's employment was, that he lost his employment and that he was substantially disrupted. Can I turn to, and maybe my colleagues are going to say not yet, but can I turn to the procedural default and the concession there? Before we complete the switch topics, let me just ask you. You said that you thought there had been a waiver of an argument regarding presumption of prejudice. In the opening brief at pages 37 to 38, appellant argues that the fourth Barker factor continues to prejudice the accused. Extreme delay will presumptively compromise the reliability of the trial in ways that neither party can prove, or for that matter, identify, so courts may presume prejudice and goes on to discuss cases that say as much. Why is that not sufficient to preserve an argument regarding presumption of prejudice? Your Honor, our position is that what this court requires is a square argument about why the waiver of an argument is not sufficient to preserve an argument. That said, understanding that that, even assuming that if this court does not like the waiver argument, we can show that we've rebutted the presumption of prejudice. That's almost a strange segue to procedural default, because you're challenging harm on the default point where that was there. I mean, as I understand it, one way to get in this procedural default place is a failure to put the court on notice, the state court on notice, of a federal claim. And there has to be both factual and legal substance to an argument. Not just facts, not unconnected to law, not just lost sites. And we even have the Supreme Court, and I think McCandless probably says it too, is it's not sufficient that a somewhat similar state law claim was made. And so all that suggests to me that when I look at the Superior Court brief, if I was on the Superior Court, it wouldn't be obvious to me at all. That there was a Sixth Amendment speedy trial right being presented. And it also, and they didn't even act like it was. So it's kind of this very strange thing where you say, if it was fairly presented, you would expect the Superior Court to have addressed it, right? Because it would have been on notice of the argument. So why exactly are you conceding here? So Judge Phipps, I start by saying we're conceding procedural default here because our reading of the Superior Court brief is that it's a close call. We don't disagree that it's a close call. But under the factors that have been set out in McCandless and Wilkerson, Kennedy did just enough to put the Superior Court on notice that he's asserting a claim that's related to his constitutional speedy trial right. He's talking about state cases that are relying on federal analysis. He is talking about the... You understand, though, that just before in response to Judge Krause, you were talking about square presenting, and if it's not squarely presented, then we don't accept it. And now we're talking about state cases that are inspired in some way by the federal speedy trial right that wasn't really, really addressed. And so is it your position that we have to accept your concession? Or is it your position that it is in our judgment whether or not we should accept that? So our position is that you don't have to accept our concession. Our position is that this isn't a waiver. Our position is that our reading of the cases, our reading of the Superior Court brief is that it's fair presentation by Mr. Kennedy. And so it's our obligation to tell the court what our position is on that. And to be clear, are you applying a different standard to a pro se state court brief than the counseled appellant's brief? No, the pro se state court brief is obviously entitled to liberal construction, as all pro se pleadings are. The counseled Superior Court brief is not, but even not applying a liberal construction to it, we see the federal claim there. But to be clear, I meant the counseled appellant's brief that you were talking to us about a moment ago. So, I mean, just to come back to this one more time. I don't know if you ever want to put on robes someday, but if you were on the Superior Court and you got that brief, would you say to yourself and maybe your colleagues, out of the blue, we've got a federal Sixth Amendment claim? Or would you say, no, this is our state law claim? I mean, do you really think it puts the Superior Court on notice that there's a Sixth Amendment claim? I do, Judge Phipps. I think that what he is, the thrust of that brief is that he has speedy trial rights on the Constitution and that those rights are being violated. Now, those rights are being violated in a mechanical way by the Commonwealth's Rule 600, which is a mechanical application. But they're also generally being violated by the fact that there is a federal speedy trial right that he hasn't been able to make out. And so this is a case where while it's understandable that the Superior Court didn't pass on the claim and that has implications for deference and things like that, but there's a federal issue that appears on the filing in the Pennsylvania Supreme Court. So, but when we want to talk about federalism and comedy, we have an issue presented to a state court. The state court, I think, if they would have thought that issue was fairly presented, would have addressed it because it is an independent basis for Mr. Kennedy's, it's an independent claim. And so what we basically have to say is that he fairly presented something and that the Superior Court didn't realize that he squarely presented it. And inaccurately and erroneously neglected giving attention to a claim that he fairly presented. And so that sort of second guessing is a little bit inconsistent with robust federalism and comedy, right? So it's not uncommon for state courts to not pass on every claim that's been fairly presented under the federal standard. And I'm thinking of, we didn't cite in our briefs, but this is the Johnson v. Williams case from the Supreme Court in 2013. And what we're talking about here is kind of the distinction between whether or not the petitioner fairly addressed the claim and whether or not the claim was adjudicated by the petitioner and then not, the state court does not address it. And then we get into questions about how do we treat the state court's reasoned opinion on the matter. But what, fair presentation doesn't require the state court to recognize that a federal, doesn't require the state court to recognize that there's a federal claim before it. I'm putting on my Superior Court robes to try to go back to the position of the judge here. This may be too much historical detection, but did Rule 600 have its genesis in the Sixth Amendment or in something unique to the Pennsylvania Constitution? So my understanding of Rule 600 is that it is flows from the U.S. Constitution and the Pennsylvania Constitution's speedy trial right, which are, those rights are synchronous. And Rule 600, the cases describe it as a mechanical attempt to apply the protections of the speedy trial right. Of course, the tests are distinct, though. The test that we have been talking about today, the Barker test, is distinct from this mechanical question of the runtime of Pennsylvania's speedy trial, Rule 600. This is a little subjective. So a Superior Court judge in Pennsylvania may see Rule 600 and think, oh, another Sixth Amendment claim, just under our Constitution. Yeah, it's not an unreasonable thing for the state court to do, given the volume of petitions presented to the Superior, BCRA petitions. But also, the federal right would require a showing of prejudice, and Rule 600 doesn't. And so it seems if you're going to squarely present a federal constitutional claim, you would at least address prejudice in a way that is unnecessary for Rule 600. And so do you see something in the Superior Court brief that raises prejudice in a way that is, that fairly presents it? Because that's a big part of this case. Yes. It's a huge part of this case, because we're dealing with a federal right. You'd expect it to be a huge part of the Superior Court case if they were presenting that argument. So offhand, I can't recall a specific part of the Superior Court brief that is talking about the prejudice that Kennedy suffered, the kind of specific prejudice that we're talking about in Barker. But it does talk, again, if my recollection is correct, it's talking about the sort of general prejudice that's suffered by anyone who doesn't get their speedy trial. Which, that is the core of, that's the core of Barker. The core of Barker is acknowledging that speedy trial is a weird right that balances a lot of different societal interests. One of them is the defendant's anxiety and concern, and the desire for him not to be prejudiced. And to the extent that the brief discusses those facts, then I think that, I think it's in there. May I ask you about a couple points of, if we're going to use, a couple points of clarification? Sure. So the Commonwealth concedes that 40 of the 50 months of delay are attributable to the Commonwealth, but then talks about 30 months of delay subtracting the 10 attributable to Kennedy. And while we talked about something like that in Battis, that's not actually what we did in Battis, right? Acknowledge that, Judge Krause. And it's a strange, I think it's a strange bit of law, because you have these four categories of delay, some of which have different weights, one of which weighs against Kennedy. And it makes sense that if delay weighs against Kennedy, it would be subtracted as the word used in Battis. But that isn't what the court did in Battis. And so here, 40 months of delay is attributable to the Commonwealth. And the other thing I wanted to clarify, there's a reference to how long he was remaining in pretrial custody after the motion for release was granted. At some point it's eight months, at some point it's 10 months.  So the order by the trial court releasing him on his own recognizance is eight months. There is the bail bond form, which was signed at 10 months. And I can't represent to you when exactly he was released on that record. Okay. Ms. Brown. Thank you, Your Honors. I want to focus on prejudice. Judge Phipps, you correctly pointed out that the categories listed in Barker of personal prejudice are not exhaustive. Barker was specific when it laid out its factors that it said that any relevant consideration should be considered by courts in analyzing this, in conducting a speedy trial analysis. And here, it is extremely relevant that Mr. Kennedy functionally lost the job as a Marine. He had enlisted to serve his country, and yet he was isolated from his unit and spent countless months separated and restricted in what he was doing. That it's easy to understand how someone in his shoes, a young man who is in a community where cohesion is so important, who is isolated and separated and ostracized, would feel great anxiety and be distressed by that. And that is important, especially given how long this delay was. The Commonwealth points to cases where anxiety wasn't enough, but those cases involved much shorter periods of delay. And it's true that what this court must look to is what is beyond what is ordinary in a criminal proceeding. But the Commonwealth has acknowledged in their brief that this delay was out of the ordinary. And so the prejudice that Mr. Kennedy suffered was thus out of the ordinary. The Commonwealth has failed to rebut the presumption of prejudice. They point to the preservation of their evidence, which this court rejected in Velazquez. And they say that the amount of evidence that they had against Mr. Kennedy is sufficient on its own to rebut the presumption, and that's not true. The government in Velazquez had recorded testimony from accomplices. They had recordings of Mr. Velazquez himself, and that wasn't enough to rebut the presumption. The presumption applies, and we, as Judge Krauss pointed out, we did argue this in our brief. We did not waive it. And given the length of this delay, and that the Commonwealth has not affirmatively shown that there was no harm to Mr. Kennedy's defense as a result of this delay, the presumption applies, along with the personal prejudice that he suffered. Again, it is the cumulative effects of this prejudice that this court must consider. And it is very important that this is a delay that is attributable to the Commonwealth from their continued negligence over time. I mean, the fact that 18, or 16 months, excuse me, after Mr. Kennedy's arrest, the Commonwealth needed to further investigate what they have considered an open and shut case. And then, in September 2011, began a period of 18 months of judicial delays. And then, the final seven months, even once the court congestion was cleared, the Commonwealth still failed to bring witnesses in their own custody down. That violated Mr. Kennedy's constitutional right to a speedy trial, and the district court's dismissal of his habeas petition should be reversed. Thank you. The court will take the case under advisement. We thank counsel for excellent arguments on both sides. And in our, I'll also take this opportunity, with all of the introductions that were being done, I omitted to do my own. And that is, we have with us Judge Richard Stearns, who is visiting for this sitting with us from the District of Massachusetts. And we sometimes have visiting judges from other circuits or district courts. It's a great service to our court, as well as a privilege to get to work with. So, wise and experienced to judge. So, welcome. And again, congratulations on excellent first argument, as well as more experienced argument. We'll call our next case. Thank you.